## 11728. WALLACE v. THE STATE.

In refusing to charge the jury as requested, and in charging as the court did as to the owner's consent to the taking away of the package alleged to have been stolen, and as to what would constitute a sufficient asportation or removal of the package by the accused,— a shipping clerk employed in the owner's store, from which it was taken by a drayman who, according to the evidence, was requested by the defendant to carry it off and to sell the goods therein for him, and who informed the owner of this request before taking it away and was thereupon told to take it out as the defendant had requested him to do, — there was no error that would require a new trial.

A conviction of simple larceny was authorized by the evidence.

DECIDED NOVEMBER 9, 1920.

Indictment for larceny from house — conviction of simple larceny; from Chatham superior court — Judge Meldrim. June 24, 1920.

Application for certiorari was denied by the Supreme Court.

According to the evidence the accused, Charles Wallace, a ship-

ping clerk in the place of business of the Shuptrine Company, asked Charles Gadsden, a wagon driver employed at the same place, to carry off and sell for him, wherever it could be sold, a certain package containing 4040 small packages of chewing gum, belonging to the Shuptrine Company, which was then upstairs in the company's store, and to bring the money back to him. Gadsden went to Mr. Shuptrine, the president of the company, and told him about it, and Mr. Shuptrine told Gadsden to "go ahead and take it out" as Wallace had told him to do. Gadsden "went back upstairs and told Wallace it was all right, and he (Wallace) put it on the elevator and brought it downstairs and put it on the wagon;" "he did not make any attempt to take it privately; he did it publicly, where any one could see it;" he placed it on the elevator with other packages which were to be taken out, and took it from the elevator to the wagon, and the witness drove the wagon to Nevill's place of business and told Nevill about it, Nevill informed Shuptrine that the package was there, and Shuptrine went there and got it and took it back to Shuptrine Company's store. Shuptrine testified: "I knew this stuff was going out of the store, I would say, about midday. . . It actually left the store about half past five or six o'clock. . . It was upstairs in the store when I knew it was going out. I told Gadsden, when he informed me what Charley Wallace wanted him to do, to take out anything that Charley gave him to take out. Gadsden told me he took it out. I did not see it on the wagon before it was taken away from the store. . . I told him to take the stuff that Charley gave him and carry it away from the store. That is all I told him. I did not tell him to go upstairs and bring the goods down himself." The wholesale value of the package was about $140. A detective testified that the defendant freely and voluntarily told him and Mr. Shuptrine that this package was "the first and only thing that he ever stole from Mr. Shuptrine," and that when he stole the package he gave it to Gadsden to take out and sell for him. At the trial the defendant stated that Gadsden said to him, "If you will put 50 boxes of Adams gum up for me to take out on the wagon, I will take it out and sell it. . . I will get $40 for it and we will divide the $40 between the two of us. . . You are the shipping clerk here, and there is no chance of getting anything from here without you knowing it;" so Gadsden got it

and put it on the elevator and took it down with the other freight.

The jury found the accused guilty of simple larceny, his motion for a new trial was overruled, and he excepted. The main contention in the motion for a new trial was that the consent of the owner prevented the taking and carrying away of the package from being larceny. In one of the grounds of the amendment to the motion it is alleged that the court erred in refusing to charge that " if the defendant conceived a plan of stealing the property described, and set out to put his plan in execution, but did not remove the property from the premises, and thereafter an agent of the owner, with the consent of the owner and at the instigation of the owner, assisted the defendant in removing the property from the premises, the defendant would not be guilty of larceny from the house, since the property was being removed with the consent of the owner and the active assistance of his agent." In this ground it is alleged that " the fact that the defendant may have been convicted of simple larceny will not alter the case, since it was shown that the defendant had charge of the goods as shipping clerk, and the fact that he may have changed the position of the goods in the store would not complete the crime. He had to do an unauthorized act with regard to the removal of the goods. He had to get the goods from the store without the consent of the owner or the assistance of his agent." For this reason it is alleged in another ground of the motion, that the court erred in charging that if the goods were " moved at all by the defendant, that is in law a sufficient asportation or taking of the goods."

The court, on request of the defendant, charged as follows: " If the agent of the owner of the property described in the indictment, after obtaining the permission of the owner to move the goods from the premises, then went to the prisoner and induced the prisoner to steal the property, and the prisoner did take the property and delivered it to the agent of the owner of the property, the defendant would not be guilty; and it does not make any difference, as far as his guilt or innocence is concerned, that he did not know the owner had consented to the taking of the property." Later the court, in response to an inquiry from the jury as to whether they could find the accused guilty " if he did not steal privately and was not the originator of the crime," charged them as follows: " Now, as

to what you mean by originator of the crime. I am not clear. I charge you upon this subject, if he had the intent to steal, whether that intent originated with him or with some one else, you would be authorized to find him guilty, if all the essential elements were proven to your satisfaction and beyond a reasonable doubt. But if Mr. Shuptrine consented to his taking and carrying away the goods of the Shuptrine Company, then he could not be found guilty." It is alleged that the court erred in thus charging in response to the inquiry of the jury, because the effect of this part of the charge was to remove from the consideration of the jury one of the defenses, "to wit, the fact that the defendant was induced to remove the property by the agent of the owner of the goods, and that therefore the goods were not taken against the will of the owner."

*David S. Atkinson,* for plaintiff in error, cited: 25 Cyc. 38 (2); 55 *Ga.* 391, 395; 113 *Ga.* 1039; 6 *Ga. App.* 801; 3 *Ga. App.* 342; 18 *Ga. App.* 233; 18 Colo. 373 (25 L. R. A. 341); 42 Tex. 108; 76 Mich. 200; 53 *Ga.* 249.

*Walter C. Hartridge, solicitor-general, Shelby Myrick,* contra, cited: 35 *Ga.* 247; 72 *Ga.* 745; 113 *Ga.* 1038.

BLOODWORTH, J. 1. None of the grounds of the amendment to the motion for a new trial points out any error which would require this court to grant a new trial.

2. There is some evidence to support the verdict, which has the approval of the presiding judge, and this court will not interfere.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*